IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BRAD FREEMAN**                                                                         **PLAINTIFF**

v.                         No. 3:23-CV-00259 KGB

**PLEASANT PLAINS, ARKANSAS**                               **DEFENDANT**

<u>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

      COMES now Defendant, the City of Pleasant Plains Arkansas, by and through its attorney, M. Keith Wren, and for its Brief in Support of Motion for Summary Judgment, states:

<u>**INTRODUCTION**</u>

      Plaintiff, Brad Freeman filed this suit following his termination as Police Chief of the Defendant City of Pleasant Plains, Arkansas. He alleges two theories of recovery: (1) that his dismissal was a wrongful discharge in violation of public policy of the State of Arkansas, and (2) that his due process rights under the United States Constitution were violated.

      Plaintiff may not recover under either theory. To succeed on a violation of public policy claim, Plaintiff must point to statutory authority that shows that his conflict with the Defendant is the result of a public policy of Arkansas. There was no policy requiring Plaintiff to incorrectly report that city employees had illegally accessed Arkansas Crime Information Center information through the mail. City employees never did so, and any possible concern that they could do so was misplaced.

      As to the due process claims, Ark. Code. Ann. § 14-42-110 eliminated the need for due process where a mayor hires or fires a department head such as a police chief. Because the legislature removed any property interest Plaintiff might have in retaining his job, his dismissal does not require any further due process, including any additional hearing. For the reasons

1

discussed herein, Defendant respectfully requests that this Court grant its motion for summary judgment.

## STATEMENT OF FACTS

A recitation of the undisputed material facts is contained in Defendant's Statement of Undisputed Material Facts ("SUMF") filed along with this Brief. Due to its size, it is incorporated herein by reference as if repeated word for word.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 447 U.S. 317, 323–24 (1986). As the United States Court of Appeals for the Eighth Circuit has recognized, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp.*, 477 U.S. at 327).

The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents and affidavits it contends show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. But the moving party does not have the burden of *negating* the other party's claim. The moving party meets its burden by merely "pointing out" to the district court that there is an

"absence of evidence to support the nonmoving party's case." *Id.* at 325. Then, the nonmoving has to meet a burden of its own in order to survive the motion for summary judgment. *Id.* To do this, the party needs to go beyond its own pleadings to designate specific facts raising a genuine triable issue. *Celotex*, 477 U.S. at 324.; *see also Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1998).

In order to establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute, (2) the disputed fact is material to the outcome of the case, and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 339, 401 (8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.*; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

A nonmoving party will not meet its burden unless it "set[s] forth specific facts, *by affidavit or other evidence*, showing that a genuine issue of material fact exists." *National Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999) (emphasis added). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Anderson*, 477 U.S. at 255 (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). Nor is it enough to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court will view facts that create a genuine dispute in the light most favorable to the nonmoving party; however, it will not accept a version of the facts that

"blatantly contradict[s] with the record." *Michael v. Trevena*, 899 F.3d 528, 532, 535 (8th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

## ARGUMENT

### I. PLAINTIFF'S CLAIM THAT HIS DISMISSAL WAS A WRONGFUL DISCHARGE IN VIOLATION OF THE PUBLIC POLICY OF ARKANSAS FAILS FOR LACK OF STATUTORY AUTHORITY.

Plaintiff cannot offer statutory authority that shows that his dispute with Defendant is based on a violation of the public policy of Arkansas. *See Palmer v. Arkansas Council on Econ. Educ.*, 40 S.W.3d 784, 790 (Ark. 2001). There are no state statutes which prohibit the conduct that Plaintiff claims to have reported. In Plaintiff's Complaint, he cites several statutes for the proposition that Paula Burns committed a crime by accessing "ACIC information and records" in the form of mail and allowing them to sit on her desk for "a two-to-three-day period." These statutes are Ark. Code Ann. § 12-12-207, -211, and -212, as well as ACIC System Regulations adopted in accordance with the Administrative Procedure Act. As discussed below, Defendants actions were not prohibited by any of the statutes or regulations cited by Plaintiff. Because the public-policy exception does not apply when an employee reports practices that do not violate state statutes, Plaintiff is not entitled to raise the public-policy exception to support his claim for wrongful discharge. *See Perry v. Walmart Stores, Inc.,* 2023 Ark. App. 599, *8-9 (2023).

Under Arkansas law, "an employer may fire an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine." *Lynn v. Wal-Mart Stores, Inc.*, 280 S.W.3d 574, 579 (Ark. App. 2008). In *Scholtes v. Signal Delivery Service, Inc.,* 548 F. Supp. 487 (W.D. Ark. 1982), the District Court recognized four exceptions to the employment-at-will-doctrine. The exceptions are:

> (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory

right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.

*Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp 487, 494.  These exceptions were quoted with favor by the Supreme Court of Arkansas in *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 245, 743 S.W.2d 380, 383 (Ark. 1988).  Here, Plaintiff alleges that his dismissal constitutes a case in which he was discharged in violation of the general public policy of the state.

"It is generally recognized that the public policy of a state is found in its constitution and statutes." *Sterling Drug,* 294 Ark. 239, 249.  To succeed on a claim for discharge in violation of public policy, a plaintiff must cite to public policy outlined in state statutes.  *Palmer v. Arkansas Council on Economic Educ.*, 40 S.W.3d 784, 790 (Ark. 2001).  When a plaintiff cannot do so, he cannot demonstrate that he was discharged in violation of public policy.  *Id.*  "[T]he public-policy exception does not apply when an employee report[s] practices that did not violate a state statute, even if the practices or actions affected the public good."  *Perry v. Walmart Stores, Inc.,* 2023 Ark. App. 599, *9 (Ark. App. 2023).

The Arkansas Crime Information Center (hereinafter "ACIC") maintains and operates the Arkansas Crime Information System (hereinafter "ACIS").  Ark. Code Ann. 12-12-207(a).  Ark. Code Ann. § 12-12-207(a) describes the Arkansas Crime Information System as "computer based."  Ark. Code Ann. § 12-12-207(b) limits who may "use the system" by restricting it to "serving the informational needs of governmental criminal justice agencies and others specifically authorized by law *through a communications network connecting local, county, state, and federal authorities to a centralized state repository of information."* (emphasis added).  The ACIC System Regulations solely contemplate accessing the ACIS records maintained by ACIC through means of an "access device," defined as "a computer terminal, microcomputer workstation, mobile data

device or other electronic equipment used to communicate with the ACIC computer system." The United States Mail is not included in the definition of "Access Device." [Ex. 6, ACIC System Regulations § 2(b)].

Ark. Code Ann. § 12-12-211 further controls the availability of ACIS records by limiting their dissemination in accordance with Ark. Code Ann. § 12-12-1008—12-12-1011, granting access to the Office of Child Support Enforcement in limited instances, requiring elected law enforcement officers to complete a law enforcement training program before accessing records, granting statutory access to the State Board of Law Examiners, and allowing the Arkansas Crime Information Center to access insurance verification provided to the Department of Finance and Administration. It is unclear from Plaintiff's Complaint what relevance, if any, this statute has to Plaintiff's claims.

Ark. Code Ann. § 12-12-212, states, in relevant part:

(a) A person is guilty of a Class A misdemeanor upon conviction if the person knowingly:

   (1) Accesses information or obtains information collected and maintained under this subchapter for a purpose not specified by this subchapter; or

   (2) Releases or discloses information maintained under this subchapter to another person who lacks authority to receive the information.

Plaintiff assumed without factual basis that Ms. Burns could have knowingly accessed or obtained information collected and maintained by ACIC or that she could have knowingly released or disclosed such information to an unauthorized person. [SUMF, ¶ 2-11] Plaintiff does not point to any specific confidential ACIC document or record which Ms. Burns accessed or disclosed, stating in conclusory fashion that Ms. Burns "had opened the mail and was reading the confidential records enclosed." [Doc. 2, Plaintiff's Complaint, ¶ 27] When Plaintiff called ACIC Field Representative Zach Osborne to speak about the situation with Ms. Burns, Mr. Osborne did not

6

report the situation as a violation. [Ex. 7, Declaration of Rick Stallings; Ex. 8, Declaration of Zachary Osborne] Rather, Plaintiff was advised to post an "Authorized Personnel Only" sign at the entrance to the Police Department office. [Ex. 4, Plaintiff's Ans. to Interrog., No. 16.]

As discussed above, the Arkansas Crime Information Center system is a computer-based system. Information is sent and received over a communications network connecting local, county, state, and federal authorities to a centralized state repository of information by means of access devices, not through the U.S. Mail. To the extent that ACIC regulations contemplate paper documents at all, it is in the context of maintaining site security near ACIC access devices. *See* [Ex. 6, ACIC System Regulations, § 4] In this context, the quintessential "document" to be protected from access by unauthorized persons are "printouts, listings or other official records" generated from the information contained in the ACIS. [Ex. 6, ACIC System Regulations, § 4(d)] This does not support the proposition that restricted ACIC "documents" may be accessed through mail sent from ACIC. In fact Mr. Osborne stated in his declaration that the information sent through the mail is sex offender information that is regularly posted at police departments. [Ex. 8, Declaration of Zachary Osborne, ¶ 10] The Pleasant Plains Police Department was not a direct access agency and had no means of accessing confidential information within the ACIC system through the mail. [Ex. 8, Declaration of Zachary Osborne, ¶ 5] Because the activity that Plaintiff reported did not and could not violate any Arkansas statute, his dismissal was not in violation of general public policy. *See Perry v. Walmart Stores, Inc.,* 2023 Ark. App. 599, at *9.

Even if Plaintiff could show that his alleged reporting of Ms. Burns was in service to the public policy of Arkansas, he cannot show that he was discharged because he reported her. After Plaintiff called Mr. Osborne, he was told by Mayor Burns on September 27, 2023 that he could not purchase a ballistic shield for the Midland School District located in Pleasant Plains. On

September 28, 2023, Plaintiff purchased a ballistic shield at a cost of $399 and billed it to the Pleasant Plains Police Department. [SUMF ¶16; Ex. 10, Invoice for shield].  He then donated it to Midland High School on Friday, September 29, 2023. [SUMF ¶ 17; Ex. 11, Photo of Brad Freeman and shield; Ex. 4, Plaintiff's Resp. to Interrogatory No. 6 ("I donated it to the Midland High School in the event of an Emergency")]  This action was at minimum without the approval of the Mayor or Treasurer, but likely in direct opposition to the Mayor.  [SUMF ¶ 15; Doc. 2, ¶ 38-41]  After a confrontation with the Mayor regarding the situation, he was discharged the following Monday, October 2, 2023.  [SUMF ¶ 18-19]  Under these circumstances, Plaintiff cannot show that his termination was caused by his reporting of Ms. Burns because he was terminated for a distinct, legitimate reason that was more proximate in time to his discharge.

## II. PLAINTIFF'S CLAIM OF A VIOLATION OF HIS RIGHT TO DUE PROCESS IS BARRED AS A MATTER OF LAW

With regard to his claim for a violation of his right to due process, Plaintiff alleges:

43. After his termination, Plaintiff repeatedly requested a grievance hearing before the City Council regarding his termination.

44. Mayor Burns denied his request and refused to allow Plaintiff a hearing.

45. Upholding Plaintiff's termination without allowing Plaintiff a grievance hearing or any opportunity to appeal his grievance to the City Council, which had no opportunity to review Plaintiff's employment record prior to his termination, denies the Plaintiff due process of under the law, as guaranteed by the 14th Amendment to the United States Constitution.

[Doc. 2, p. 6]

The problem with Plaintiff's claim is that any due process claim that a municipal department head had was eliminated by the enactment of Ark. Code. Ann. § 14-42-110. Ark. Code Ann. § 14-42-110(a)(1) provides:

Mayors in cities of the first class and second class and incorporated towns shall have the power to appoint and remove all department heads, including city and town marshals when an ordinance has been passed making city and town marshals

appointed, unless the city or town council shall vote by a two-thirds majority of the total membership of the council to override the mayor's action.

Ark. Code Ann. § 14-42-110(a)(1).

The Eighth Circuit has held that any property right that police chiefs once held were eliminated by the enactment of § 14-42-110. *Sykes v. City of Gentry, Ark.,* 114 F.3d 829, 831 (8th Cir. 1997). Additionally, this very issue, the alleged right to a post-termination hearing before a city council by a terminated police chief, has also been decided. In *Sartor v. Cole* the mayor prohibited the council from voting on whether to override the mayor's decision to terminate the police chief by adjourning the city council meeting before the matter could be considered by the council. The United States District Court for the Western District of Arkansas dismissed Plaintiff's due process claim based on § 14-42-110, finding that because that statute eliminated any property right the plaintiff may have had in his employment, he, therefore, had no right to due process regarding his termination. *Sartor v. Cole*, No. 1:12-CV-01011, 2012 WL 2974693 (W.D. Ark. July 20, 2012). That ruling was affirmed by the Eighth Circuit Court of Appeals. *Sartor v. Cole*, 501 F. App'x 604 (8th Cir. 2013). As a result, Plaintiff's due process claim fails as a matter of law and must be dismissed.

## **CONCLUSION**

For all of the reasons stated herein, Defendant is entitled to summary judgment on all of Plaintiff's claims.

WHEREFORE, Defendant respectfully requests that this Court grant its Motion for Summary Judgment, dismiss Plaintiff's Complaint with prejudice, and for all other just and proper relief.

                Respectfully submitted,

                CITY OF PLEASANT PLAINS
                **DEFENDANT**

By:    M. KEITH WREN, #94107
        P.O. Box 38
        North Little Rock, AR 72115-0038
        Tel: (501) 374-3484, ext. 163
        mkwren@arml.org